**ROBERT S. SOLA**
Oregon State Bar No. 844541
rssola@msn.com
**SHIDON B. AFLATOONI**
Oregon State Bar No. 113115
Robert S. Sola, P.C.
1500 S.W. First Avenue, Suite 800
Portland, Oregon 97201
Telephone (503) 295-6880
Facsimile (503) 243-4546

**JOHN SOUMILAS** (*pro hac vice*)
jsoumilas@consumerlawfirm.com
Francis & Mailman, P.C.
100 South Broad Street, Suite 1902
Philadelphia, PA 19110
Telephone (215) 735-8600
Facsimile (215) 940-8000
Attorneys for Plaintiff Pauline Short

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

**PAULINE SHORT,**
**On behalf of herself and all others similarly situated,**

Plaintiff,

v.

**EQUIFAX INFORMATION SERVICES LLC,**
a foreign corporation,

Defendant.

Civil No. 3:14-cv-00471-YY

**PLAINTIFF PAULINE SHORT'S MOTION TO COMPEL RESPONSES TO PLAINTIFF'S INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS**

**(Fed. R. Civ. P. 37)**

**Request for Oral Argument**

## LOCAL RULE 7-1 CERTIFICATION

Plaintiff Pauline Short ("Plaintiff") certifies that her counsel made a good faith effort through telephone conferences with counsel for Defendant Equifax Information Services LLC ("Defendant" or "Equifax") to resolve the dispute and have been unable to do so.

## MOTION

Plaintiff moves the Court to compel Defendant to provide responses and documents in response to Plaintiff's Interrogatories 1 and 2, and Plaintiff's Request for Production of Documents 59, as narrowed by Plaintiff's requests for the consumer files pertaining to the tax liens identified in the lists of released tax liens that Plaintiff has provided to Equifax.[1] The answers to these discovery requests are necessary to identify class members in this consumer protection class action as well as the extent of Equifax's non-compliance with the law.

## INTRODUCTION

Plaintiff has brought a class action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA") due to Equifax's inaccurate and improper reporting of released Oregon tax liens. Specifically, Plaintiff asserts that Equifax is misreporting Oregon tax liens with balances allegedly owing when those liens have, in fact, been released according to publicly available tax lien records, in violation of 15 U.S.C. § 1681e(b) (the Section 1681e(b) class); and that Equifax is unlawfully reporting paid tax liens more than seven years after they were in fact paid, in violation of 15 U.S.C. § 1681c(a)(3) (the Section 1681c(a)(3) class).

The class representative, Plaintiff Pauline Short, had a tax lien that was released in January 2000, and the certificate of release was publicly recorded in Multnomah County in February 2000. Yet Equifax reported that tax lien in March 2012 with a $17,197 balance, without any indication it had been paid or released. Plaintiff seeks to identify all similarly situated class members.

[1] During the Telephone Status Conference on May 31, 2016 (Dkt. No. 50), the parties discussed with the Court a briefing schedule for a motion to extend the discovery deadline. After conferring with Equifax it is clear that Equifax will not produce the requested information regardless of an extension. Declaration of Robert S. Sola in Support of Plaintiff Pauline Short's Motion to Compel Responses to Plaintiff's Interrogatories and Request for Production of Documents ("Sola Decl.") ¶ 2. Therefore, Plaintiff believes that a motion to compel is the appropriate method to resolve the parties' disputes, and a more efficient use of the Court's time.

**BACKGROUND**

Plaintiff moves to compel production of discovery necessary to determine the number of class members, the identities of class members, and the scope of Equifax's FCRA violations. Plaintiff has been seeking this information for almost two years.

In September 2014, Plaintiff served Interrogatories and Requests for Production of Documents requesting the identities and credit files of all persons whose file included an Oregon tax lien on or after March 24, 2009 that was not being reported as paid, satisfied or released. *See* Exh. A, Plaintiff's Interrogatories (No. 1), Sola Decl. ¶ 15; Exh. B, Plaintiff's Second Request for Production of Documents (No. 59), Sola Decl. ¶ 16. Plaintiff also requested the names of all persons to whom Equifax reported that tax lien information. *See* Exh. A, Interrogatory No. 2. Equifax objected and did not produce the information. *See* Exh. C, Equifax's Objections and Responses to Interrogatories (Nos. 1 and 2), Sola Decl. ¶ 17; Exh. D, Equifax's Objections and Responses to Request for Production of Documents (No. 59), Sola Decl. ¶ 18.

In light of Equifax's objections to producing the information on class members, Plaintiff decided to narrow her requests to those consumers who had a released tax lien on record with a county recorder. Plaintiff requested a deposition of Equifax to find out exactly what information Equifax needed to search its consumer files and locate files with Oregon tax liens. Although Plaintiff originally requested this deposition on June 2, 2015, Equifax did not provide a witness for this deposition until March 11, 2016. Sola Decl. ¶ 3. (The case was stayed for several months while the parties discussed settlement among themselves and with the aid of this Court).

In that deposition, Equifax testified that if provided with the tax lien number (which Equifax calls the "case number"), it could retrieve the consumer file in which the tax lien appears. Thus, if Plaintiff obtained records of releases of tax liens with the tax lien number,

Equifax could find the files for the consumers with those released liens. Those consumer files could be reviewed to see if Equifax was reporting the lien as released. If it was not, the consumer would be a member of the Section 1681e(b) class. And if Equifax was reporting a tax lien more than seven years after it was paid, that consumer would be part of the Section 1681c(a)(3) class.

Based on this testimony, Plaintiff went to considerable time and expense to learn the accessibility of county records of released tax liens, including tax lien numbers, how Plaintiff could compile a list of the released tax liens that Plaintiff could then provide to Equifax, and compiling such lists. Declaration of Shidon B. Aflatooni in Support of Plaintiff Pauline Short's Motion to Compel Responses to Plaintiff's Interrogatories and Request for Production of Documents ("Aflatooni Decl.") ¶ 2. Around the same time that Plaintiff began obtaining tax lien information from certain counties, Equifax served a document request on Plaintiff to produce documents received from any third party, including documents from public records that could be used to identify class members. Sola Decl. ¶ 4.

In response to that request, Plaintiff produced a list of released tax liens obtained from Washington County that included the lien number, the consumer's name and the date of the release. Plaintiff advised Equifax that with this list "Equifax could locate the files of consumers whose lien release was not reported by Equifax (or whose lien was not timely deleted) and who had a credit report with this inaccurate lien information furnished during the time period of 5 years prior to the complaint being filed, March 24, 2009, up to the present."[2] *See* Exh. E, Sola Decl. ¶ 19. Plaintiff also sent Equifax a list of released tax liens from the records of Benton, Polk and Tillamook counties. *See* Exh. G, Aflatooni Decl. ¶ 6. Equifax subsequently informed Plaintiff that it would not produce any of these files. Sola Decl. ¶ 5.

[2] This request sought a narrowly focused subset of the consumer files Plaintiff had requested in Interrogatories 1 and 2, and Request for Production of Documents 59.

Equifax contends that Plaintiff requests a volume of data that is impossible for Equifax to compile. Plaintiff has substantially limited her original requests, however, and seeks only the consumer files for persons with released tax liens during the time period from March 24, 2009 to the present – the applicable statute of limitations period for this case. In addition, Equifax's witness testified that Equifax can locate the files that Plaintiff has requested.

## ARGUMENT

### 1. The Requested Discovery is Relevant and Necessary to Obtain the Information from Equifax that will Identify the Class Members and Reveal the Scope of Equifax's Noncompliance with the FCRA

This Court has the power to compel discovery responses. Fed. R. Civ. P. 16 and 37. There is no doubt that the discovery that Plaintiff seeks is relevant and necessary in this case.

Discovery obtained to date confirms that Equifax's misreporting of tax liens is a widespread problem in Oregon. In Interrogatory responses, Equifax states that for the two year period of March 2012 to March 2014, 2,815 persons disputed the accuracy of Oregon tax lien information. *See* Exh. I, Equifax's Responses to Plaintiff's Second Set of Interrogatories (No. 12), Sola Decl. ¶ 22. Of the 2,815 persons who disputed, 1,452 persons received results from Equifax saying the disputed information was modified, updated or deleted. *See* Exh. I, Equifax's Responses to Plaintiff's Second Set of Interrogatories (No. 13). In other words, Equifax was reporting inaccurate tax lien information for 51% of the persons who disputed. Equifax also admits that for 412 persons, the tax lien information was changed to a status of "released," "satisfied" or "paid." *See* Exh. I, Equifax's Responses to Plaintiff's Second Set of Interrogatories (No. 14). This shows that Equifax failed to update its reporting to the correct status for approximately 15% of such liens.[3]

---

[3] In Plaintiff's case, her tax lien was released in 2000 but Equifax was not reporting it as released in March 2012, despite the record of the release being in the Multnomah County records for the

These figures are compelling evidence that Equifax is not following reasonable procedures to "assure" the "maximum possible accuracy" of the tax lien information it reports, as required by the FCRA. 15 U.S.C. § 1681e(b). For purposes of Fed. R. Civ. P. 23(a) numerosity, these figures for persons who disputed are just the tip of the iceberg. Many people who have inaccurate tax lien information on their consumer reports do not dispute it because they are not aware that Equifax is reporting inaccurate information, they do not know they can dispute that information, or they choose not to. Plaintiff did not learn that Equifax was reporting her tax lien without indicating it was released until 12 years after it was released.

These violations cause substantial harm to consumers. Unpaid tax liens are very damaging to one's credit. Paid or released tax liens are substantially less damaging because there is no outstanding debt. Yet Equifax is reporting thousands, or likely tens of thousands, of Oregon tax liens as unpaid or not released when they have been paid or released.

The class definitions in this case are not limited to persons who disputed. They include all persons within the five year period prior to the filing of the complaint whose lien was not reported as paid or released when it should have been. 15 U.S.C. § 1681p. Moreover, the claim that Plaintiff brings under FCRA section 1681e(b) does not require a dispute. That is why it is essential that this Court compel production of the requested information. As permitted by Fed. R. Civ. P. 23, that information will identify and quantify all class members, not simply the small subset who sent disputes to Equifax. And it will facilitate the participation of all qualified class members in this class action. Moreover, this information will reveal the size and scope of

---

previous 12 years. Because the lien was paid in 2000, Equifax should not have been reporting it at all, because Section 1681c(a)(3) prohibits a consumer reporting agency ("CRA") from reporting a tax lien more than seven years after it is paid. The other two CRAs, Experian and Trans Union, were not reporting Plaintiff's tax lien in March 2012.

Equifax's violations. This is important evidence directly bearing on Plaintiff's claim that Equifax's violations were willful. 15 U.S.C. § 1681n.

**2. Equifax Is Able to Obtain the Information Requested In Discovery**

During the Telephone Status Conference on May 31, 2016 (Dkt. No. 50), Defendant indicated that it was "just not possible" for it to answer the discovery Plaintiff sought. In its formal objections to Interrogatories 1 and 2, and Request for Production 59, however, Equifax never said it did not possess or could not obtain the requested information. Rather, it claimed the requests were overbroad, unduly burdensome and the requested information was not relevant to the case. *See* Exhs. C and D. That is because Equifax has that information and can obtain it. In addition, Plaintiff has substantially narrowed her original requests.

After Equifax refused to provide the requested information, Plaintiff sought, and eventually took, a deposition of Equifax focused on learning the information Equifax needed to locate consumer files with tax lien information. Once Plaintiff knew the information Equifax needed to locate the files with tax liens, Plaintiff could obtain records of released tax liens with the information Equifax needed and provide that information to Equifax. Equifax designated Margaret Leslie as its witness for this "database" deposition, which occurred on March 11, 2016.

During the deposition, Plaintiff's counsel noted that each tax lien has a number, and that Equifax includes the lien number, which Equifax calls the "case number," when Equifax reports a tax lien. Ms. Leslie testified that if Equifax was provided with the case number, it could retrieve the consumer credit file that the lien is associated with:

> Q: Well, let me back up then, because I want my question to be as broad as possible, which is regardless of database, any of the ones you identified today or any other database that Equifax has or any other computer system that Equifax has which you did not testify about today. *My question is whether, if I were to give Equifax only a case number for a tax lien, it could retrieve the file that that tax lien is associated with.*

> *A: I can do that by programming, yes.*

Exh. F, Deposition of Equifax (Margaret Leslie) (referred to as "Leslie Depo") 59:3-12. (emphasis added), Sola Decl. ¶ 20.

Plaintiff's counsel followed up by asking out of which database the information would be retrieved. Ms. Leslie responded:

> A: I can look in the ACIS database, and that process is different from looking in the ACRO database. I can't think of other databases to search at Equifax since you made it really broad, *but I can tell you that we can program a search in ACRO to look for a specific case number and if it's there retrieve it. ACIS has a different query system, but I think we could possibly do the same thing in ACIS. I think we can.*

Exh. F, Leslie Depo, 59:15-23. (emphasis added).

Plaintiff's counsel then confirmed again that all Equifax needed was the case number to locate the consumer file that the tax lien appeared in, using Plaintiff as an example.

> Q: Okay. So If I were to give you that eight-digit case number that we saw associated with Ms. Short's tax lien of $17,197 and all you had was the eight-digit case number and nothing else, there would be some way of programming a query to get us to Ms. Short's file?
>
> A: Yes.

Exh. F, Leslie Depo, 59:24 to 60:6.

Plaintiff obtained a transcript of the deposition on or about March 25, 2016. Sola Decl. ¶ 6. After reviewing Ms. Leslie's testimony, Plaintiff knew exactly the information it needed to obtain from the county recorders' offices, and provide to Equifax, so it could find the consumer files that would identify the class members.

A few days later, Plaintiff's counsel began researching accessing Oregon counties' records of released tax liens. Over the next several weeks, Plaintiff's counsel contacted various county recorders' offices, viewed their websites, and personally visited the county recorder

offices in Washington, Clackamas and Multnomah counties. Plaintiff's counsel learned that Washington County had a searchable list of released tax liens, with the tax lien number (*i.e.*, what Equifax calls the "case number"), that could be accessed and printed only by going to the Washington County recorders' office. Plaintiff's counsel returned to the Washington County recorders' office, conducted a search to obtain the list and then printed the list. Plaintiff's counsel then scanned the list so it could be electronically provided to Equifax. Aflatooni Decl. ¶ 3.

Because of the information provided by Ms. Leslie in her deposition, Equifax was now aware that Plaintiff knew the information Equifax needed to locate consumers' files with tax liens, and that Plaintiff could search county records to obtain records of released tax liens that included the tax lien ("case") number. Those consumer files would definitively identify class members by name and address.

Accordingly, on April 16, 2016, Equifax served its Second Set of Requests for Production of Documents ("RFP") on Plaintiff, requesting records from third parties, including records showing that the identities of class members are available through publicly available records (*e.g.,* county records of released tax liens). Sola Decl. ¶ 7.

On May 3, 2016, Plaintiff's counsel spoke with Equifax's counsel about discovery. Equifax asked if Plaintiff would supplement her response to an Interrogatory requesting identities of persons with knowledge relevant to the case to include any county recorders Plaintiff was contacting. Plaintiff agreed to supplement her response and provide that information. Equifax asked about which counties Plaintiff was looking at and whether Plaintiff was obtaining a "master list" of liens. Plaintiff said she was obtaining a list of released liens and that she would produce the list to Equifax and ask Equifax to find the files of the consumers with those liens. Sola Decl. ¶ 8.

Plaintiff began responding to Equifax's request for county records on May 5, 2016, well before Plaintiff's response was due. Plaintiff's counsel sent Equifax's counsel an email with a link to the list of released federal tax liens obtained from the Washington County recorder's office. Plaintiff's counsel informed Equifax's counsel that the "reference" numbers for each lien on the list was the serial number (that Equifax calls the "case number"). Plaintiff's counsel advised Equifax that with this list, Equifax could locate the files of consumers whose lien release was not reported by Equifax (or whose lien was not timely deleted) and who had a credit report with this inaccurate information furnished during the time period of March 24, 2009 to the present.[4] *See* Exh. E. Equifax has not provided that requested information.

On May 25, 2016, Plaintiff's counsel sent Equifax's counsel an email with a link to a list of released tax liens obtained from the Benton, Polk and Tillamook county recorders.[5] *See* Exh. G. Equifax has not produced the consumer files that contain these released liens.

Equifax testified that if provided with the "case number" it could locate the consumer file with that tax lien. Based on that testimony, Plaintiff expended substantial time and money to research the records of county recorders, obtain lists of released tax liens with the "case number," review those lists, and remove liens that did not relate to this case.

Equifax requested that Plaintiff produce these county records. Plaintiff has done so. It is only fair that Equifax produce the consumer files it said it could locate using the information in these records.

---

[4] Prior to sending this list, Plaintiff's counsel reviewed the list of over 8,000 released liens and removed over 1,500 liens that were asserted against corporations. Aflatooni Decl. ¶ 4.

[5] Prior to sending this list, Plaintiff's counsel reviewed the list of over 15,800 released liens to remove liens that were asserted against a corporation or were not asserted by a taxing agency. Aflatooni Decl. ¶ 5.

**3. Equifax was Recently Able to Identify a Similar Class of Consumers in Virginia**

Although Defendant complains that identifying class members is just too difficult in this case, it was able to identify class members in a very similar class action in Virginia that it settled within the last year. Equifax defended a comparable FCRA section 1681e(b) consumer class action in Virginia by making similar arguments to those it makes here regarding its inability to identify class members. *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 196-98 (E.D. Va. 2015). In *Soutter*, the plaintiff asserted that Equifax systematically failed to obtain and report the dispositions of civil judgments in Virginia, such as failing to report that a judgment was satisfied or vacated. The plaintiff proposed to identify class members whose judgments had not been properly updated by comparing publicly available data regarding the dispositions of civil judgments (including the dates on which civil judgments were updated) with Equifax's own frozen scan records. *Id.* at 196. Equifax objected, as it does here, that such a process would be impossible because it was too "costly and time-consuming," and involved multiple steps. *Id.*

The *Soutter* court rejected this argument, finding that "Equifax's protests ring especially hollow in light of its own substantial capabilities," and noting that "Equifax's very business model" involves processing and distilling large amounts of data from different sources. *Id.* at 197. The court rejected Equifax's ascertainability argument, and also found that the plaintiff's proposed method of identifying class members did not render the litigation unmanageable or overwhelm the relief ultimately available. *Id.*

When the *Soutter* case later settled on a class-wide basis, Equifax confirmed its ability to identify approximately 90,000 class members about whom Equifax had reported an open civil judgment, although the judgment had been satisfied, vacated, dismissed, or appealed. Exh. J, pp. 7, 8, 17, *Soutter v. Equifax Info. Servs., LLC*, No. 3:10-cv-00107 (E.D. Va.), Dkt. No. 235-1,

(sections 2.23, 3.2, 6.3) (Settlement Agreement filed Dec. 8, 2015); Exh. K, p. 9, *Soutter*, Dkt. No. 236, (Memorandum of Law in Support of Motion for Preliminary Approval). Equifax did so through reference to its own records and public records of Virginia judgments provided to Equifax by the plaintiff. Exh. J, pp. 7, 8, *Soutter*, Dkt. No. 235-1, (sections 2.25, 3.2).

Moreover, the search of Equifax's records in *Soutter* was for a much longer time period than in this case. The *Soutter* Class covered Equifax files over a thirteen-year period, from January 1, 2003 to the date of preliminary approval (a date after preliminary approval was sought on December 8, 2015). Exh. J, p. 7 (section 2.23). The Equifax records sought in this case cover only about half that time period, from March 24, 2009 to the present.

Equifax now repeats the same arguments it used in *Soutter*, and they ring hollow once more. Equifax plainly has the ability to compare publicly available data with its own internal records because it previously did so in an analogous situation. It can do so again.

**4. Plaintiff Has Been Requesting the Information on Identifying Class Members Since Discovery Began in 2014**

During the Telephone Status Conference on May 31, 2016, Defendant also seemed to indicate that it was too late for the discovery that Plaintiff seeks. Although it has been a long and difficult process trying to get Equifax to produce information that would identify the class members, Plaintiff was prompt in seeking class member discovery and negotiated in good faith on the scope of that discovery with Defendant before seeking assistance from this Court.

In fact, Plaintiff first requested this information almost two years ago, on September 29, 2014, when she served Interrogatories and Requests for Production of Documents. *See* Exhs. A and B. On November 10, 2014, Equifax served its responses. In response to Interrogatories 1 and 2, Equifax asserted objections and did not provide any information. *See* Exh. C. In response to

Request for Production No. 59, Equifax objected and did not produce any documents. *See* Exh. D.

The parties continued with additional written discovery including interrogatories and requests for documents. The parties also agreed to extensions of the discovery deadlines.

In light of Equifax's failure to produce the information Plaintiff had requested that could be used to identify class members, Plaintiff decided to take a different, more focused approach to obtaining the information. Plaintiff would take a deposition of Equifax to learn the specific information on tax liens that Equifax needed to locate consumer files with tax liens, and then try to obtain that information from county records and provide it to Equifax. Through preliminary research into county records, Plaintiff learned that some counties had different systems for providing public access to records of released liens. This made it imperative that Plaintiff learn exactly what information Equifax needed to search for tax liens in its consumer files, so that Plaintiff did not waste time visiting county offices and searching county records that did not provide ready public access to the information Equifax needed.

Plaintiff referred to this deposition to learn the information Equifax needed to locate files with tax liens as the "database" deposition. Although Plaintiff requested this deposition in June 2015, Equifax did not produce a witness for this deposition until more than nine months later.

Plaintiff first requested the database deposition in a telephone conference with Equifax's counsel on June 2, 2015. Equifax's counsel said she would check and requested more information on the topics and timeframe. Sola Decl. ¶ 9.

On July 28, 2015, Plaintiff's counsel sent Equifax's counsel an email with the topics for the database deposition, in preparation for a telephone conference the parties were going to have the next day. In the email, Plaintiff's counsel stated:

> Meryl, During our call tomorrow I want to discuss an idea I previously suggested: a deposition on Equifax's database. I see this as a preliminary deposition to find out information that would facilitate further discovery, and was hoping we could do it soon. You had asked me to send a list for such a deposition. I do not recall if I previously sent it so I am attaching a list. Robert Sola

*See* Exh. H, Sola Decl. ¶ H.

During a telephone conference with Equifax's counsel on July 29, 2015, Plaintiff again proposed taking the database deposition. Equifax requested the topics for the full Rule 30(b)(6) deposition of Equifax to see if one representative of Equifax could do both the database topics and the other topics. Sola Decl. ¶ 10.

On August 12, 2015, Plaintiff sent Equifax a deposition notice that listed all the topics. Sola Decl. ¶ 11. On August 27, 2015, Equifax's counsel sent Plaintiff's counsel an email stating that she was talking with Equifax about dates for Equifax's deposition. Sola Decl. ¶ 12.

In early September 2015, the parties discussed entering into settlement negotiations. Sola Decl. ¶ 13. On September 16, 2015, the parties filed a Joint Motion to Stay Deadlines Pending Settlement Discussions (Dkt. No. 34).

On September 18, 2015, the Motion to Stay was granted (Dkt. No. 35). Discovery in the case was stayed. Equifax had still not provided a date or witness for the deposition.

On January 29, 2016, the Court lifted the stay (Dkt. No. 45).

After the stay was lifted, Plaintiff again requested the database deposition of Equifax. The database deposition was finally taken on March 11, 2016. Sola Decl. ¶ 14.

An unsuccessful Settlement Conference was held on March 16, 2016 (Dkt. No. 48).

Plaintiff received a transcript of the database deposition on March 25, 2016. Upon reviewing the transcript of the database deposition, Plaintiff learned that Equifax could use the

tax lien number to search its consumer files to locate tax liens reported about individual consumers. This information could be used to identify class members.

As discussed above, Plaintiff's counsel then sought and obtained records of released tax liens, with tax lien numbers, from county recorders. Plaintiff responded to Equifax's April 16, 2016 request that Plaintiff produce records obtained from the counties, by producing records of released tax liens from Washington County on May 5, 2016, and additional counties on May 25, 2016. *See* Exhs. E and G.

Despite Plaintiff's longstanding and extensive efforts to obtain the requested information, including substantially narrowing the requests and gathering records of released tax liens to reduce any burden on Equifax, Defendant continues to refuse to provide the information.

## CONCLUSION

The information that Plaintiff seeks is relevant, necessary and can be produced by Equifax. For the reasons stated above, Plaintiff's motion to compel should be granted.

DATED: June 17, 2016

Respectfully Submitted,

/s/ Robert S. Sola

Robert S. Sola, OSB # 844541
Robert S. Sola, P.C.
1500 S.W. First Avenue, Suite 800
Portland, Oregon 97201
Telephone (503) 295-6880
Facsimile (503) 243-4546

John Soumilas (*pro hac vice*)
Francis & Mailman, P.C.
100 South Broad Street, Suite 1902
Philadelphia, PA 19110
Telephone (215) 735-8600
Facsimile (215) 940-8000

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been electronically filed with the clerk of the court using the CM/ECF system which will send notice of such filing to the following counsel:

Jeffrey M. Edelson
Markowitz, Herbold, Glade & Mehlhaf, P.C.
1211 SW Fifth Avenue, Suite 3000
Portland, OR 97204

Meryl Roper
Zachary McEntyre
Barry Goheen
J. Anthony Love
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521

Attorneys for Equifax Information Services, LLC

Dated this 17th day of June 2016.

/s/ Robert S. Sola
Robert S. Sola, OSB# 844541
rssola@msn.com
Telephone (503) 295-6880
Facsimile (503) 243-4546
Attorneys for Plaintiff