IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

**PAULINE SHORT, on behalf of herself and all others similarly situated,**

**Plaintiff,**

**v.**

**EQUIFAX INFORMATION SERVICES, LLC,**

**Defendant.**

**Case No. 3:14-cv-00471-YY**

# DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Jeffrey M. Edelson
**MARKOWITZ HERBOLD PC**
1211 S.W. Fifth Avenue, Suite 3000
Portland, Oregon 97204
(503) 295-3085 (telephone)
(503) 323-9105 (fax)
JeffEdelson@MHGM.com

Zachary A. McEntyre
Meryl W. Roper
**KING & SPALDING LLP**
Atlanta, Georgia 30309
(404) 572-4600 (telephone)
(404) 572-5100 (fax)
zmcentyre@kslaw.com
mroper@kslaw.com

# TABLE OF CONTENTS


BACKGROUND ..... 3

I. Plaintiff Has Demonstrated Extraordinarily Little Diligence in Pursuing Necessary Discovery or Otherwise Prosecuting Her Claims. ..... 3

II. Plaintiff Seeks Information She Knows Equifax Cannot Provide. ..... 7

ARGUMENT ..... 10

I. Plaintiff lacks good cause for a discovery extension. ..... 10

II. Equifax should not be compelled to produce information that is not reasonably accessible. ..... 12

A. The information Plaintiff seeks is not "reasonably accessible," and Plaintiff lacks "good cause" for its production. ..... 13

B. Plaintiff's "motion to compel" is untimely. ..... 16

III. Conclusion ..... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boucher v. First Am. Title Ins. Co.*,
No. C10-199RAJ, 2012 WL 3023316 (W.D. Wash. July 24, 2012) ....................................15

*Chao v. Westside Drywall, Inc.*,
709 F. Supp. 2d 1037 (D. Or. 2010) ....................................10

*Chen-Oster v. Goldman, Sachs & Co.*,
285 F.R.D. 294 (S.D.N.Y. 2012) ....................................14

*Cognex Corp. v. Electro Scientific Indus., Inc.*,
C.A. No. 01CV10287RCL, 2002 WL 32309413 (D. Mass. July 2, 2002)....................................15

*Corwin v. Lawyers Title Ins. Co.*,
276 F.R.D. 484 (E.D. Mich. 2011) ....................................15

*Dream Marriage Grp., Inc. v. Anastasia Int'l, Inc.*,
No. CV 10-5034 RSWL (FFMX), 2012 WL 3024227 (C.D. Cal July 23, 2012) ....................................17

*Gault v. Nabisco Biscuit Co.*,
184 F.R.D. 620 (D. Nev. 1999)....................................16, 17

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ....................................10

*Milt's Flying Service, Inc. v. AV Finance, Inc.*,
No. CV 01-180-BR, 2002 WL 31975066 (D. Or. Dec. 2, 2002)....................................18

*Neustar, Inc. v. F5 Networks, Inc.*,
No. 5:12-cv-02574-EJD (PSG), 2013 WL 5711979 (N.D. Cal. Oct. 17, 2013)................18, 19

*Randleman v. Fid. Nat'l. Title Ins. Co.*,
646 F.3d 347 (6th Cir. 2011) ....................................15

*Reitz v. Adams*,
C.A. No. 3:13-cv-02025-AC, 2015 WL 1346127 (D. Or. March 23, 2015) ....................................12

*Rogers v. Brauer Law Offices, PLC*,
No. CV-10-1693-PHX-LOA, 2011 WL 3665346 (D. Ariz. Aug. 22, 2011)....................................16

*South Yuba River Citizens League v. National Marine Fisheries Service*,
No. S-06-2845 LKK/JFM, 2009 WL 1288047 (E.D. Cal. May 6, 2009)....................................12

*U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*,
305 F.R.D. 225 (S.D. Cal. 2015) ....................14

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................16

*Wilmington Trust Co. v. AEP Generating Co.*,
No. 2:13-CV-01213, 2016 WL 860693 (S.D. Ohio Mar. 7, 2016)....................15

**Statutes**

15 U.S.C. § 1681(a) ....................8

FCRA ....................7

**Other Authorities**

Fed. R. Civ. P. 1....................2, 3

Fed. R. Civ. P. 6(d) ....................18

Fed. R. Civ. P. 16(b)(4)....................10

Fed. R. Civ. P. 23(c)(2)(B) ....................14

Fed. R. Civ. P. 26....................15

Fed. R. Civ. P. 26(b)(2)....................14

Fed. R. Civ. P. 34(b)(2)(A)....................18

Federal Rule of Civil Procedure 26(b)(2)(B)....................12

Federal Rule of Civil Procedure 30(b)(6) ....................5, 11

Or. Civ. R. 16-2(e)(4) ....................18

Or. Civ. R. 16-3(a)....................10, 11, 12

Ignoring the Court's instruction to file a motion attempting to justify her request for a ***fifth*** extension of the discovery period (Dkt. 50), Plaintiff instead filed a motion to compel, contending that it is the "appropriate method to resolve the parties' disputes, and a more efficient use of the Court's time." Dkt. 52 at 2 n.1. But Plaintiff's strategic decision was not about judicial economy. It was an attempt to shirk her burden to show "good cause" for yet another, seemingly open-ended, discovery extension. Plaintiff cannot meet that burden, and her untimely motion to compel should be denied because it seeks information that is not reasonably accessible.

Plaintiff purports to ask the Court to compel Equifax to provide responses and documents in response to two interrogatories and a request for production that she served in September 2014, a week after obtaining her first discovery extension. These requests, which sought historical data from Equifax reflecting consumers whose tax liens it had inaccurately reported as unreleased, were profoundly overbroad. Among other problems, they sought information that Equifax could not (and cannot) reasonably provide. As Plaintiff acknowledges, she wanted the information so that she could identify the putative class members, which is a prerequisite for class certification. But in isolation, the information would have been worthless. It would only have been useful if Plaintiff could also obtain records—as a threshold matter—from each of 36 Oregon counties identifying consumers whose tax liens had, in fact, been paid, released, or satisfied, so that she could compare the two data sets.

Equifax objected to Plaintiff's requests, and—despite obtaining three more discovery extensions (the last of which Equifax opposed)—Plaintiff did not challenge Equifax's objections. Nor, apparently, did she take any steps to obtain the county records that she knew she would need to identify the alleged class members. While she represented to the Court in May 2015 that a third discovery extension was warranted for that purpose, Plaintiff now admits she did not start

collecting that information until ***March 2016***—after the Court granted her a fourth discovery extension, over Equifax's objection. Even now, Plaintiff has obtained release records from only four counties, none of which is the county in which her lien release was recorded.

On May 5, 2016—less than 30 days before the latest extended discovery period was to close—Plaintiff e-mailed a new request (apparently superseding her earlier formal requests) that Equifax provide:

> the files of consumers whose lien release was not reported by Equifax (or whose lien was not timely deleted) and who had a credit report with this inaccurate lien information furnished during the time period of 5 years prior to the complaint being filed, March 24, 2009, up to the present.

Roper Decl., Ex. A (May 5, 2016 e-mail from R. Sola to Z. McEntyre & M. Roper). This "narrowed" request does not solve the intractable problem with Plaintiff's earlier requests—it still seeks information that is not reasonably accessible, which is precisely what Equifax's corporate representative established during the deposition that preceded the request.

Plaintiff has had more than enough time to conduct discovery in this case. The Court should not countenance her lack of diligence by giving her even more time—especially since she only purports to need it to obtain information from Equifax that it cannot provide and then use that information to conduct what amounts to a file-by-file review to identify purported class members, which itself demonstrates that class certification will never be appropriate. To do so would contravene the district court's fundamental obligation "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

## BACKGROUND

**I. <u>Plaintiff Has Demonstrated Extraordinarily Little Diligence in Pursuing Necessary Discovery or Otherwise Prosecuting Her Claims</u>.**

Plaintiff filed this case on March 24, 2014, Dkt. 1, and Magistrate Judge Janice M. Stewart set the discovery deadline for July 22, 2014. Dkt. 2. On July 21, 2014, Plaintiff—having conducted no discovery—filed the first of three unopposed (four total) motions to extend discovery. Dkt. 10. She sought an extension of 150 days, to December 19, 2014. *Id.* The Court granted the motion. Dkt. 11.

Two months later, on September 29, 2014, Plaintiff served Equifax with her Second Request for Production and First Set of Interrogatories, which included the interrogatories and request that are ostensibly the basis for her motion:

> <u>Interrogatory No. 1</u>: Identify each and every person whose file included tax lien information on or after March 24, 2009, that was not being reported as paid, satisfied or released, including full name, address, date of birth and all information concerning the tax lien on the file.
>
> <u>Interrogatory No. 2</u>: For each person and tax lien identified in your response to Interrogatory No. 1, provide the names of any and all persons or companies to whom Equifax reported the tax lien information and the dates of such reports.
>
> <u>Request for Production No. 59</u>: Please produce in their native and electronic form a copy of your full credit file, credit history and all archived reports and/or files (including frozen scans) for each consumer whose file included tax lien information at any time on or after March 24, 2009.

Dkt. 53, Exs. A & B. On November 10, 2014, Equifax objected to these requests because they were overly broad and unduly burdensome and sought irrelevant information that was not reasonably calculated to lead to the discovery of admissible evidence. Dkt. 53, Exs. C & D.

On December 15, 2014, Plaintiff filed her second unopposed motion to extend discovery by another 150 days. Dkt. 23. The Court granted the motion, extending the discovery period to May 18, 2015. Dkt. 24. On May 15, 2015, Plaintiff asked for a third discovery extension, this

time of 120 days. Dkt. 32. In the spirit of cooperation, Equifax once again did not oppose Plaintiff's request, even though Plaintiff had conducted no discovery (of Equifax or anyone else) since her request five months earlier. The Court granted the motion. Dkt. 33.

With the exception of Plaintiff's requests for a second and then third discovery extension, the case was dormant between November 10, 2014 and May 26, 2015. Plaintiff did not take issue with Equifax's written discovery responses or objections, including its objections to Interrogatories 1 and 2 and Request for Production 59. Dkt. 23. Nor, apparently, did Plaintiff obtain the county records she knew she would need, as a threshold matter, to identify any purported class members. In her May 15 request for a third discovery extension, Plaintiff informed the Court that she needed more time for discovery because "[i]n addition to obtaining information from Equifax," she needed to "obtain information in the county recorders' offices on tax liens." Dkt. 32. To that end, Plaintiff represented to the Court that she was "investigating methods for searching tax lien information with the county recorders' offices." *Id.* Because "there is not a unified system for checking all county records in the State," Plaintiff stated that she would "have to search each county's records separately." *Id.*

The Court granted Plaintiff's third unopposed motion and extended the discovery cut-off to September 16, 2015. Dkt. 33. On May 26, 2015, Plaintiff served her Second Set of Interrogatories. Roper Decl. ¶ 2. In those interrogatories, which are not at issue here, Plaintiff sought information relating to the number of consumers who disputed any aspect of Oregon tax liens on their Equifax credit files (as opposed, for example, to disputes relating solely to whether a tax lien was inaccurately showing as unpaid or unreleased). *Id*. Because that dispute-related information—which resides in its own, separate database—was reasonably accessible, Equifax

responded on July 13, 2015, providing Plaintiff with the information she sought, subject to certain objections.[1] Roper Decl. ¶ 2.

On June 2, 2015, Plaintiff's counsel asked to depose "a person with knowledge of Equifax's database and searching for lien information." Roper Decl. ¶ 3. When the parties conferred that same day, Equifax—consistent with Federal Rule of Civil Procedure 30(b)(6)—asked Plaintiff to provide a list of deposition topics, which would facilitate Equifax designating the appropriate person to testify. Roper Decl. ¶ 3. Plaintiff's counsel agreed to provide the list, but did not do so ***until July 28, 2015***—nearly two months later. Roper Decl. ¶ 4.

Shortly thereafter, the parties entered into good-faith settlement discussions. Roper Decl. ¶ 4. On September 16, 2015, the last day of discovery under the Court's May 18, 2015 Order, the parties filed a Joint Motion for Stay of Deadlines Pending Settlement Discussions. Dkt. 34. In that motion, the parties agreed that "***limited*** discovery remain[ed] ***outstanding***" and stipulated that if the parties were unable to reach a settlement, one or both Parties may seek such "limited," "outstanding" discovery. Dkt. 34 ¶ 2; 8 (emphasis added). The Court granted the motion (Dkt. 35) and subsequently granted the parties' requests on November 4, 2015 (Dkt. 37) and December 4, 2015 (Dkt. 39) to extend the stay.

In January 2016, settlement discussions reached an impasse. The parties agreed that the stay should be lifted but disagreed about the scope of the "limited discovery that remain[ed] outstanding" and how much additional time was necessary to complete that discovery. In

[1] Based on those responses, Plaintiff asserts that "Equifax was reporting inaccurate tax lien information for 51% of the persons who disputed" and that "Equifax failed to update its reporting to the correct status for approximately 15% of such liens." Dkt. 52 at 5. Those assumptions are unwarranted. There is no way to know what specifically each consumer disputed about a particular tax lien without reviewing the documents unique to that consumer. Roper Decl., Ex. C (A. Fluellen May 13, 2016 Dep. Tr. at 181:15-183:5). The fact that Equifax changed its reporting in some way does not mean its original reporting was inaccurate—it simply means it changed its reporting, which it could have done for any number of reasons. *Id.* at 181:24-182:4.

Equifax's view, the only discovery "outstanding"—*i.e.*, requested by either party at the time the stay was entered and discovery was formally closed—was Plaintiff's depositions of Equifax's corporate representatives and Equifax's depositions of Plaintiff and her wife. Roper Decl., Ex. B. Plaintiff, on the other hand, viewed "limited discovery" much more expansively—she argued that discovery should be re-opened for 120 days, without any limitation as to scope. *Id.*

On January 29, 2016, Magistrate Judge Stewart conducted a telephonic status conference, Dkt. 42, and granted Plaintiff's request for another 120 days of unlimited discovery. Dkt. 45. Judge Stewart made clear, however, that there would be no further extensions. Roper Decl. ¶ 5. On March 11, Plaintiff deposed Margaret Leslie, Equifax's designated corporate representative, about Equifax's ability to identify the purported class members. Plaintiff deposed Equifax representatives Mark Boyd and Alicia Fluellen on May 5, 2016 and May 13, 2016, respectively. Roper Decl. ¶ 6.

On May 5, 2016, less than 30 days before the fourth extended discovery deadline, Plaintiff sent Equifax a .pdf file that she described as a list of federal tax lien releases recorded in Washington County. Roper Decl., Ex. A. The 401 page file, which does not reference Washington County or explain the "search results" it displays and which was accompanied by no verification attesting to its origin or contents, includes entries dating from 1988 to 2016. *Id.* The cover email stated the request at issue in Plaintiff's motion:

> With this list, Equifax can locate the files of consumers whose lien release was not reported by Equifax (or whose lien was not timely deleted) and who had a credit report with this inaccurate lien information furnished during the time period of 5 years prior to the complaint being filed, March 24, 2009, up to the present.

Roper Decl., Ex. A. The email also instructed that "[f]or released liens recorded after 2000, the references number will be the same as the serial number (e.g. references "2000-098115" is the same as the serial number "2000098115["])." *Id.* For lien releases recorded before 2000, on the

other hand, "the serial number will not include the first two digits of the year (e.g. references "1999-013486" = serial number "99013486")." *Id.* As a result, Equifax would "need to drop the first two digits of the year identified in the 'references' of the search results when searching its records for tax liens by serial number for released liens recorded prior to 2000." *Id.* Plaintiff manually drew a line through releases obtained by corporations, which cannot assert FCRA claims. *Id.*

Twenty days later, on May 25, 2016, Plaintiff sent Equifax six more files (again, in .pdf) that she described as records of federal and state tax lien releases in Benton, Polk, and Tillamook counties. Roper Decl., Ex. D. In total, the files contain 2161 pages of individual release entries dating back to 1980. *Id.* Once again, Plaintiff manually struck released tax liens against corporations. *Id*. To date, Plaintiff has provided no additional lists from any other counties—including Multnomah County, where Plaintiff's tax lien release was recorded—or clarified whether she intends to produce, or is capable of producing, lists from any other counties.

## II. <u>Plaintiff Seeks Information She Knows Equifax Cannot Provide.</u>

Equifax does not maintain historical data in a manner that allows it to search for particular information (in this case, tax liens) about a large number of specific consumers (in this case, approximately 445,000, assuming Plaintiff intends to continue obtaining county records) across a significant period of time (in this case, 87 months and counting). Leslie Decl. ¶ 10; *see* Roper Decl., Ex. E, Leslie Dep. at p. 78, lines 2-11. That information is not reasonably accessible to Equifax. *Id.* ¶ 20; *see* Roper Decl., Ex. E, Leslie Dep. at p. 78, lines 2-11.

Equifax maintains consumer information in a live database called ACRO, which is its primary credit-reporting database. Roper Decl., Ex. E, Leslie Dep. at p. 12, lines 12-13; Leslie Decl. ¶ 11. At any given moment, ACRO contains up-to-date information about approximately

220 million consumers. Roper Decl., Ex. E, Leslie Dep. at p. 13, lines 4-7; Leslie Decl. ¶ 11. It is the primary database Equifax uses to conduct its day-to-day business, Roper Decl., Ex. E, Leslie Dep. at p. 12, lines 12-13; Leslie Decl. ¶ 11, which provides an essential function to the financial system in the United States. *See* 15 U.S.C. § 1681(a) ("Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers."). It reflects the information Equifax might report about a particular consumer if a consumer report were provided at that very moment. Roper Decl., Ex. E, Leslie Dep. at p. 13, lines 8-13; Leslie Decl. ¶ 12.

ACRO is ***not*** a record of historical information. Leslie Decl. ¶ 12. It does not reflect the manner in which a particular consumer's information may have been reported by Equifax in the past; it only reflects the manner in which the consumer's information is reporting right now. Leslie Decl. ¶ 12. For example, ACRO would reflect whether a consumer currently has a tax lien filed in an Oregon court and whether that lien is released or unreleased. Leslie Decl. ¶ 12. If the lien is showing released, ACRO would ***not*** reflect when Equifax received that information—in other words, it would not reflect that the tax lien was reporting as "unreleased" for some period of time and then began reporting as "released" on a specific date.[2] Leslie Decl. ¶ 12. If the lien was more than ten years old, or if it had been released more than seven years earlier, it would not appear on in ACRO at all, pursuant to Equifax's current "purge" rules. Leslie Decl. ¶ 12. These purge rules effect the removal of stale information from Equifax's database. Leslie Decl. ¶ 12.

Because ACRO is not a historical record of consumer information, the only way Equifax can attempt to determine what information it may have reported about a consumer in the past is

[2] Equifax receives information from its public records vendor on a schedule that various from county to county.

to retrieve and review a "frozen scan." Roper Decl., Ex. E, Leslie Dep. at p. 34, lines 13-23; Leslie Decl. ¶ 13.

Equifax does not maintain, in the ordinary course of business, a record of consumer reports it issues to third parties. Leslie Decl. ¶ 15. Accordingly, if Equifax needed to determine whether it may have reported a released tax lien about a single consumer in a particular month, it would have to retrieve and review a frozen scan for that particular month for the state in which that consumer lived in that month. Leslie Decl. ¶ 16. But there are limitations on the information contained in frozen scans. While a frozen scan identifies "users" of consumer information (such as potential creditors to whom Equifax issued a credit report about a particular consumer), it does not catalogue the information that any particular credit report included. Leslie Decl. ¶ 15. It reflects only the information that appeared in a consumer's file at the moment the snapshot of the ACRO database was taken. Leslie Decl. ¶ 15. Third parties ask for a wide variety of information—sometimes the entire consumer report, and sometimes only a subset of information or even just a credit score. Leslie Decl. ¶ 15. Equifax thus does not have the ability to determine what information was included on any particular consumer report. Leslie Decl. ¶ 16.

Equifax does not perform the type of search Plaintiff's requests would require in the ordinary course of business.[3] Leslie Decl. ¶ 18. Doing so would require Equifax to divert considerable human and electronic resources from its core business of credit reporting. Leslie Decl. ¶ 18. In addition, because Equifax would be undertaking a task that it does not ordinarily

---

[3] To the extent Plaintiff now seeks different information than what she requested in her May 5 e-mail—*i.e.*, "consumer files for persons with released tax liens during the time period from March 24, 2009 to the present" (Dkt. 52 at 5)—that information would not help Plaintiff identify the purported class members. It would only include information about those consumers that is presently stored in Equifax's ACRO database. Leslie Decl. ¶ 12. It would not include the historical information Plaintiff would need to determine whether Equifax issued consumer reports about any particular consumers that inaccurately reflected tax liens as unreleased. *Id.*

undertake—and has never undertaken—the results of the process could be unreliable. Leslie Decl. ¶ 19. The information Plaintiff wants is not reasonably accessible. Leslie Decl. ¶ 20.

## ARGUMENT

### I. Plaintiff lacks good cause for a discovery extension.

Plaintiff cannot show good cause for any further extension of the discovery deadline, much less the indefinite extension she seeks. Fed. R. Civ. P. 16(b)(4); D. Or. Civ. R. 16-3(a). To determine whether good cause exists for a discovery extension, the Court focuses "primarily [on] the diligence of the moving party." *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1072 (D. Or. 2010) (denying motion to amend Rule 16 order because plaintiff was not sufficiently diligent). As the Ninth Circuit stated, "[i]f [the moving] party was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). To assess Plaintiff's diligence, the Court should examine whether: (1) "she was diligent in assisting the Court in creating a workable Rule 16 order"; (2) her noncompliance "occurred . . . notwithstanding her diligent efforts to comply" because of unforeseeable events; and (3) "she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply. . . ." *Chao*, 709 F. Supp. 2d at 1072-73. Plaintiff does not meet any of these criteria.

***(1) Plaintiff was not diligent in assisting the Court create a workable Rule 16 order.***

Plaintiff apparently did not start trying to obtain county records reflecting released tax liens ***until March 2016***, over a month after obtaining her fourth extension—even though (i) she knew when filing the case that she would need to obtain them; (ii) she informed the Court in May 2015, when seeking a third discovery extension, that she was trying to obtain them; and (iii) she told the Court again in January 2016, when she obtained a fourth discovery extension—over Equifax's objection—that the process of obtaining records from county recorders was time-

consuming. Even so, Plaintiff has provided Equifax with records from only four counties and provided no timetable for when (or if) she might provide more. Repeatedly seeking discovery extensions to obtain records, and then failing to obtain them, does not assist the Court in creating a "workable" Rule 16 order; it impedes that effort.

***(2) Plaintiff has not diligently attempted to comply with the Court's Rule 16 orders.***

For similar reasons, Plaintiff has not diligently attempted to comply with the Court's orders. Plaintiff contends that she was unable to begin collecting county records earlier than March 2016 because she needed to first depose Equifax's corporate representative on database-related topics and review the deposition transcript. Motion p. 8. Plaintiff's May 2015 assertion to the Court belies that contention. Dkt. 32. Even accepting Plaintiff's assertion, however, any delay in deposing Equifax's corporate representative was attributable to Plaintiff, not Equifax. Plaintiff waited over a year after filing this case to request a Rule 30(b)(6) deposition and then took nearly two more months to provide topics to Equifax. Shortly thereafter, the parties began discussing settlement, and then the case was stayed. When the stay was lifted, Plaintiff waited more than a month to notice the deposition. And she waited another 42 days after taking the deposition, until May 5, 2016, to begin providing Equifax with lists of tax lien releases and to request that Equifax compare those lists to its records. Roper Decl., Ex. A. In short, Plaintiff was not diligent in meeting the discovery deadlines imposed by the Court.

***(3) Plaintiff was not diligent in seeking amendment of the Rule 16 order and cannot "show effective prior use of time."***

Accepting Plaintiff's assertion that she could not start obtaining information from county recorders until she had reviewed the deposition testimony of Margaret Leslie, she should have known at the time she requested the 120-day extension in January 2016 that she would not be able to accomplish the discovery she wanted in that period. Yet she waited until May 17, 2016,

less than two weeks before the May 31 discovery deadline, to request a status conference so she could seek a fifth extension. And then, after the Court instructed her to file a motion explaining the basis for that request, Plaintiff did not move for an extension—she filed her untimely motion to compel about discovery requests to which Equifax objected in November 2014. *See South Yuba River Citizens League v. National Marine Fisheries Service*, No. S-06-2845 LKK/JFM, 2009 WL 1288047, at *3 (E.D. Cal. May 6, 2009) ("Defendants filed timely objections to the initial discovery requests, satisfying their obligations under these rules."). That is not "diligence," nor is it "effective prior use of time." *See* D. Or. Civ. R. 16-3(a); *see also Reitz v. Adams*, C.A. No. 3:13-cv-02025-AC, 2015 WL 1346127, at *5 (D. Or. March 23, 2015) (denying motion for extension of time upon finding that the motion did not comply with the requirements of Local Rule 16-3(a)).

This action has been pending for more than two years, and Plaintiff has known for at least that long that if she could ever meet her burden to show that this case can be efficiently tried as a class action, she would need—as a threshold matter—county records reflecting released tax liens. She failed to make effective use of four previous discovery deadline extensions to timely obtain that information. Plaintiff's motion, therefore, should be denied.

## II. Equifax should not be compelled to produce information that is not reasonably accessible.

The Court should also deny Plaintiff's motion because the information she seeks is not reasonably accessible. Federal Rule of Civil Procedure 26(b)(2)(B) provides that, if a producing party identifies information as not reasonably accessible due to undue burden or cost, the party seeking production must show good cause for production. Fed. R. Civ. P. 26(b)(2)(B). The information Plaintiff seeks is not reasonably accessible, and Plaintiff cannot show "good cause" for its production. And, in any event, Plaintiff's "motion to compel" is untimely.

**A. The information Plaintiff seeks is not "reasonably accessible," and Plaintiff lacks "good cause" for its production.**

*1. Plaintiff seeks information that is not reasonably accessible.*

The Court should deny Plaintiff's motion because she seeks information that Equifax cannot provide. Margaret Leslie made clear in her deposition that Equifax cannot reasonably identify consumers about whom it issued consumer reports that reflected unpaid, unsatisfied, or unreleased tax liens. Even attempting to perform this task would require extraordinary time and resources. And the effort would be futile: even if Equifax were able to complete the searches, the results could be unreliable. Leslie Decl. ¶ 19.

In support of her assertion that Equifax can undertake this arduous task, Plaintiff cherry- picks excerpts from Ms. Leslie's deposition testimony. But in the testimony Plaintiff cites, Ms. Leslie states only that Equifax theoretically could retrieve ***a single consumer file*** in the ACRO database associated with a tax lien using the case number for the tax lien and that Equifax could search for a ***single consumer file*** in a single frozen scan, if it knew the month and year to search. Motion p. 7-8. Ms. Leslie ***never*** testified that the process Plaintiff proposes was reasonable. To the contrary, Ms. Leslie testified that:

> "If you're running against frozen scans, it takes much longer to actually run the program. . . . I've seen it take anywhere from a couple of weeks to over a month ***per frozen***." (p. 63 lines 5-12) (emphasis added)
>
> * * *
>
> "Each set of frozens is a very large amount of data, so when I was talking about the search on that taking quite a while, I'm talking about just one month, one year. If there is a time component, like you would like me to search for a particular case number or a name and address in a particular month, I have to search that entire frozen set of data looking for that piece of information. ***So I can't like search, it's not like I can go and search for one in one frozen database or then turn around and search for another in another frozen database. This needs to be restricted to just a***

> ***month and a year.*** Otherwise, we're talking about a level of complexity that is very high." (p. 77 line 22 – p. 78 line 11) (emphasis added)
>
> * * *
>
> "So, if you remember, there is, ***it's a large volume of data to have the frozen scans***, and then I go to the next month of frozen scans to the technical resources to load one set of frozen scans into the system that we would use to do a comparison from one month to the next and then load the next month of frozen scans. The systems that we run, ***it takes a tremendous amount of the machine resources to load that in and then do the cross-comparisons***. . . . It's an extremely large amount of data you're running and then doing a comparison against. ***It's also very slow. It can take many, many weeks just to try to do [it] across just a couple of months***. . . . It's the movement and management of the extremely large amounts of data that we have to load into a system, run a query, load another set in, run a query, and then start doing cross-comparisons against these records. So it's the data-management issues that are just so extensive." (p. 104 line 15 – p. 105 line 17) (emphasis added).

Ms. Leslie's testimony leaves no doubt that the search Plaintiff's request would require is unprecedented and impracticable.[4] Even attempting to conduct it would significantly impact Equifax's ability to conduct its business. Leslie Decl. ¶ 18.

A party is not required to provide information that is not reasonably accessible, Fed. R. Civ. P. 26(b)(2), and information is not "reasonably accessible" if searching for and producing it would be unduly expensive or burdensome. *See U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 239 (S.D. Cal. 2015) (refusing to compel production of emails stored on backup tapes because the cost of restoring and searching those tapes was excessive); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 301 (S.D.N.Y. 2012) (ESI is inaccessible

---

[4] Plaintiff's discussion of the *Soutter* case is unavailing. *Soutter* bears little resemblance to this case because in *Soutter*, Plaintiff obtained and provided to Equifax a single Excel spreadsheet containing all of the necessary Virginia court information. Plaintiff admits that no such single data source exists here, which is why Plaintiff must seek information from 36 different county recorders. Even so, Equifax vigorously opposed undertaking any search in *Soutter* resembling what Plaintiff's request would implicate, and it was never required to do so. When the *Soutter* case settled, Equifax complied with its obligation to identify class members—***for settlement notice purposes***—through "reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Nothing about the effort Plaintiff would require is "reasonable."

where "the cost or burden [of production are] associated with some technological feature that inhibits accessibility"); *Wilmington Trust Co. v. AEP Generating Co.*, No. 2:13-CV-01213, 2016 WL 860693, at *2 (S.D. Ohio Mar. 7, 2016) (denying motion to compel because of cost and time required to search database). Because the information Plaintiff seeks is not reasonably accessible, the Court should deny Plaintiff's motion. *See Cognex Corp. v. Electro Scientific Indus., Inc.*, C.A. No. 01CV10287RCL, 2002 WL 32309413, *5 (D. Mass. July 2, 2002) (denying motion to compel defendant to search back-up tapes).

*2. Plaintiff has not shown good cause for information she seeks.*

Because Equifax cannot produce the information Plaintiff seeks, no amount of "good cause" for that information would warrant an order requiring its production. But even if Equifax could produce that information, Plaintiff has not shown "good cause" for it. *See* Advisory Cmte. notes to Fed. R. Civ. P. 26 (stating that the moving party bears the burden of demonstrating that its need for the requested ESI outweighs the burdens and costs of production).

The only purpose for the information Plaintiff seeks is to establish that she can identify the purported class members, which is a prerequisite for class certification. Dkt. 52 at 2. The fact that Plaintiff could only identify the purported class members through the burdensome process set forth above alone demonstrates that class certification is improper. Federal courts have repeatedly held that class certification is improper if class members can be ascertained, if at all, only by reviewing individual class members' files. *See, e.g.*, *Boucher v. First Am. Title Ins. Co.*, No. C10-199RAJ, 2012 WL 3023316, at * 8 (W.D. Wash. July 24, 2012) (collecting cases denying certification due to the inability to ascertain a class without reviewing individual files); *Randleman v. Fid. Nat'l. Title Ins. Co.*, 646 F.3d 347, 354-55 (6th Cir. 2011) (affirming decision decertifying class because liability determination would require review of individual insurance

policies); *Corwin v. Lawyers Title Ins. Co.*, 276 F.R.D. 484, 490 (E.D. Mich. 2011) (denying certification where assessment of individual transactions would be necessary to determine class membership). The burdensome process required to identify the information Plaintiff seeks, with potentially unreliable results, is not meaningfully different than a file-by-file review. There is no "good cause" to order Equifax to conduct searches it cannot reasonably conduct to enable Plaintiff to identify the purported class members when the process of searching precludes class certification.

Moreover, to date, Plaintiff has only obtained records from four counties—none of which is Multnomah County, where her own tax lien release was recorded. If Plaintiff intends to seek certification of a putative class that includes only consumers whose tax lien releases were recorded in those four counties, she cannot represent that alleged class because she would not be a member of it. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) ("'a class representative must be part of the class. . . .'"). Requiring Equifax to produce the information Plaintiff seeks would be unproductive since Plaintiff could not represent the purported class. *Id.*

**B. Plaintiff's "motion to compel" is untimely.**

Plaintiff filed her motion 17 days after discovery ended. Federal courts in the Ninth Circuit deny discovery motions filed after the discovery deadline. *See Rogers v. Brauer Law Offices, PLC*, No. CV-10-1693-PHX-LOA, 2011 WL 3665346, at * 4 (D. Ariz. Aug. 22, 2011) (denying motion to compel filed after discovery deadline and collecting Ninth Circuit cases reaching the same result). As explained by one sister court, a "'requesting party cannot delay a motion to compel with impunity.'" *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999) (quoting The Rutter Group, Federal Civil Procedure Before Trial, ¶ 11.753 (1998) (denying motion to compel filed after discovery deadline where moving party was aware

of deficiencies in discovery for two months prior to filing and did not provide justification for the delay in filing). In determining whether to deny Plaintiff's motion as untimely, the Court should consider the following factors: "'1) the length of time since the expiration of the deadline, (2) the length of time that the moving party has known about the discovery, (3) whether the discovery deadline has been extended, (4) the explanation for the tardiness or delay, (5) whether dispositive motions have been scheduled or filed, (7) the age of the case, (8) any prejudice to the party from whom late discovery was sought, and (9) disruption of the court's schedule.'"[5] *Rogers*, 2011 WL 3665346, at *4. All of those factors weigh in favor of denying the motion.

Despite knowing since the case was filed in March 2014 that she needed the discovery she seeks, Plaintiff failed to make any meaningful effort to obtain that information until May 2016, less than a month before the close of the four-times-extended discovery period. She did not file a motion to compel until two weeks after the fourth extended discovery cut-off. Plaintiff offers no explanation for that extraordinary delay, nor any justification for the disruption it will unavoidably cause to the Court's schedule for class certification and dispositive motion briefing. (In fact, Plaintiff has already sought an extension of the due dates for her class certification motion and any dispositive motions, Dkt. 56. Equifax agreed not to oppose Plaintiff's request ***only*** because if the Court denies Plaintiff's motion, Plaintiff will not be able to meet her burden of proving that the purported class members are identifiable.)

Granting Plaintiff a ***fifth*** discovery extension to obtain information from Equifax that it cannot provide—and potentially obtain county records she should have obtained long ago—all because Plaintiff failed to diligently pursue discovery earlier would result in substantial prejudice to Equifax. *See Dream Marriage Grp., Inc. v. Anastasia Int'l, Inc.*, No. CV 10-5034

---

[5] The decision inadvertently skips from factor (5) to factor (7); the omission of (6) is original.

RSWL (FFMX), 2012 WL 3024227, at *4 (C.D. Cal. July 23, 2012) (defendant unduly prejudiced by leave to file an amended complaint that would "drastically increase Defendant's time, expenses, and resources for defending this Action."). It would result in an extraordinary increase to the time, expenses, and resources Equifax would need to defend this action that has already been pending for more than 27 months; it would require Equifax to continue devoting resources to this litigation; and it would deprive Equifax of the certainty and predictability to which it is entitled.[6] Leslie Decl. ¶ 18.

A district court in the Northern District of California recently denied cross-motions to compel in a case with substantially identical facts to those here: the parties filed their cross-motions, each seeking production of ESI from each other, one day before the expiration of a twice-previously-extended discovery period. *Neustar, Inc. v. F5 Networks, Inc.*, No. 5:12-cv-02574-EJD (PSG), 2013 WL 5711979, at * 3 (N.D. Cal. Oct. 17, 2013). The court denied the plaintiff's motion after finding that the plaintiff failed to use the two previous discovery extensions to obtain needed third-party discovery and denied the defendant's motion upon finding that it failed to provide "a clear and specific objective" for seeking the production of ESI that was not reasonably accessible. *Id* at * 2-3. With regards to both denials, the court noted that

---

[6] Plaintiff's motion is also untimely because it violates Local Rule 16-2(e)(4), which provides that "[t]he Court will not require a response to a discovery request that is made with insufficient time for a party to respond before the completion of discovery date." Plaintiff's motion to compel filed is "a 'discovery request' that was 'made with insufficient time for a party to respond prior to the completion of discovery date . . . .'" *Milt's Flying Service, Inc. v. AV Finance, Inc.*, No. CV 01-180-BR, 2002 WL 31975066, at *3 (D. Or. Dec. 2, 2002) (denying motion to compel filed 14 days after discovery deadline, which had been extended three times, without requiring the opposing party to respond to the motion). And even if the motion were not considered a "discovery request," the "discovery request" at issue is Plaintiff's May 5, 2016 e-mail, which was served less than 30 days before the discovery cut-off. *See* Fed. R. Civ. P. 34(b)(2)(A) (allowing 30 days for responses to written discovery); Fed. R. Civ. P. 6(d) (adding 3 days to response deadlines to account for e-mail service).

the parties had previously been granted a stay of discovery based on their representations that there was limited discovery remaining. *Id* at * 2.

Plaintiff filed her motion to compel ESI from Equifax ***after*** the ***four-times-***previously-extended discovery deadline because she failed to use those previous extensions to obtain the information sought from Equifax as well as third-party discovery that is necessary for class certification (the only purpose for which she seeks the ESI from Equifax). Plaintiff has not explained how she will be able to use the information she seeks from Equifax for that purpose, and she has failed to provide any excuse for waiting to file her Motion until ***nineteen*** months after she received Equifax's discovery responses. Her motion to compel is thus untimely and should be denied. *See Neustar*, 2013 WL 5711979, at *3 (denying cross-motions to compel ESI filed one day before discovery cut-off because movants failed to make good use of two previous discovery extensions to obtain needed third-party discovery and sought production of ESI that was not reasonably accessible).

## III. Conclusion

For these reasons, the Court should deny Plaintiff's motion.

This 1st day of July, 2016

Respectfully submitted,

*/s/ Zachary A. McEntyre*
Zachary A. McEntyre
Meryl W. Roper
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309
zmcentyre@kslaw.com
mroper@kslaw.com
Tel: 404 572-5317
Fax: 404 572-5100

Jeffrey M. Edelson, OSB #88040
JeffEdelson@MHGM.com

MARKOWITZ, HERBOLD, GLADE
& MEHLHAF, P.C.
Suite 3000 Pacwest Center
1211 SW Fifth Avenue
Portland, OR 97204
Tel: (503) 295-3085
Fax: (503) 323-9105

*Attorneys for Defendant*
*Equifax Information Services LLC*

**ATTORNEY CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2016, I have made service of the foregoing DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL in the manner indicated:

| | | |
|---|---|---|
| John Soumilas<br>Francis & Mailman, PC<br>Land Title Building 19th Floor<br>100 South Broad Street<br>Philadelphia, PA 19110<br><br>Robert S. Sola<br>Robert S. Sola, P.C.<br>8835 S.W. Canyon Lane<br>Suite 130<br>Portland, OR 97225<br>*Attorney for Plaintiff* | ☐<br>☐<br>☐<br>☐<br>☐<br>☒ | U.S. Mail<br>Facsimile<br>Hand Delivery<br>Overnight Courier<br>Email<br>Electronically via USDC CM/ECF system |

*/s/ Zachary A. McEntyre*
Counsel for Equifax Information Services LLC